UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| REVITALIZATION PARTNERS, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>EQUINIX, INC.,<br><br>                Defendant. | CASE NO. C16-1367JLR<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

Before the court is Defendant Equinix, Inc.'s ("Equinix") motion for summary judgment. (Mot. (Dkt. # 11).) In its response, Revitalization Partners, LLC, ("Revitalization") opposes Equinix's motion and requests that the court grant Revitalization a continuance to obtain discovery relevant to the issues raised in its complaint and in Equinix's motion. (Resp. (Dkt. # 17) at 11-13.) The court has considered the motions, all submissions filed in support thereof and opposition thereto,

the balance of the record, and the applicable law. Being fully advised,[1] the court GRANTS Equinix's motion for summary judgment and DENIES Revitalization's request for a continuance.

## II. BACKGROUND

On March 5, 2012, the King County Superior Court appointed Revitalization as the general receiver for Lighthouse Electrical Group, LP ("Lighthouse"). (Dorsett Decl. (Dkt. # 12) ¶ 2, Ex. A-2 at 1, 13-24.)[2] Before being placed into a receivership, Lighthouse performed electrical contractor services in Seattle, Washington. (Neupert Decl. (Dkt. # 18) ¶ 3.) Revitalization was appointed as Lighthouse's receiver pursuant to a request by Lighthouse's primary secured creditor, Columbia State Bank ("Columbia"). (Dorsett Decl., Ex. A-2 at 14-15.) Under the King County Superior Court's Receivership Order, Revitalization took control of Lighthouse's assets and was charged with liquidating them pursuant to RCW 7.60.260. (*Id.* at 13-24.)

Upon reviewing Lighthouse's outstanding accounts receivable, Revitalization noted an apparently outstanding obligation in the amount of $251,216.01 (the "Disputed Obligation") for services that Lighthouse performed for Equinix. (Neupert Decl. ¶ 4.)

---

[1] Equinix requests oral argument on its motion for summary judgment whereas Revitalization does not. (Mot.; Resp.); Local Rules W.D. Wash. LCR 7(b)(4) ("A party desiring oral argument shall so indicate by including the words 'ORAL ARGUMENT REQUESTED' in the caption of its motion or responsive memorandum.") The court thus declines to hear oral argument because oral argument would not be helpful to the court's disposition of the motion. *Id.*; *see also Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1984) (noting that the court may not deny a request for oral argument made by a party opposing a motion for summary judgment unless the court denies the motion).

[2] Attached to the Dorsett declaration are two documents called "Exhibit A." The first is the declaration of Anthony Neupert ("Exhibit A-1"). Attached to Mr. Neupert's declaration, also called "Exhibit A," is the Stipulation and Order Appointing Receiver ("Exhibit A-2").

Revitalization contacted Scott Hettema at Equinix on or about May 18, 2012, regarding payment, and Equinix responded by providing records of payments it made to Lighthouse. (*Id.* ¶¶ 5, 7-9.)

Equinix and Lighthouse's business dealings between 2010 and 2012 bear on the instant motion. On or about July 6, 2010, Michael McCormick, a representative of Lighthouse, completed an ACH Payment Form from Equinix requesting that all amounts owing to Lighthouse be deposited into a Columbia State Bank account in the name of Lighthouse Electrical Group, ending in account number 9968 (the "First Lighthouse Account"). (Dorsett Decl. ¶ 2, Ex. C-2 at 2; L. Anderson Decl. (Dkt. # 13) ¶ 5, Ex. B.) Under the terms of the ACH Payment Authorization Form, this procedure for making payments would remain in place until Lighthouse notified Equinix of its termination or change. (L. Anderson Decl., Ex. B.) Between July 6, 2010, and January 25, 2012, Equinix submitted payments for obligations due and owing to Lighthouse by depositing funds directly to the First Lighthouse Account. (Neupert Decl. ¶ 7.) Lighthouse performed the disputed $251,216.01 worth of electrical services for Equinix between December 2011, and January 2012. (L. Anderson Decl. ¶ 4, Ex. A.)

On or around January 26, 2012, Sandra Blackburn, Lighthouse's Vice President of Special Projects, submitted an ACH Payment Form to Equinix and requested that payments owing to Lighthouse be remitted to a Key Bank account in her name, ending in account number 4840 (the "Blackburn Account"). (Neupert Decl. ¶ 8; S. Blackburn Decl. (Dkt. # 15) ¶¶ 2-3; *see also* Dorsett Decl. ¶ 2, Ex. D at 2.) Ms. Blackburn is married to Michael Blackburn, the founder, President, and co-owner of Lighthouse prior

to receivership. (M. Blackburn Decl. (Dkt. # 14) ¶ 2; Dorsett Decl. ¶ 3, Ex. B-1 at 15.) Mr. Blackburn confirms that Ms. Blackburn had actual authority to change Equinix's method of payment to direct payment to the Blackburn Account. (Dorsett Decl. ¶ 3, Ex. C-1 at 38; M. Blackburn Decl. ¶ 3.) Between February 9, 2012, and February 23, 2012, Equinix made three payments to the Blackburn Account totaling $318,920.96 (the "Equinix Funds").[3] (Neupert Decl. ¶ 9.) Mr. Blackburn knew that Equinix deposited funds into the Blackburn Account to satisfy its obligation to Lighthouse. (Dorsett Decl., Ex. C-1 at 37.) On or about February 28, 2012, Ms. Blackburn completed another ACH Payment Form with Lighthouse requesting that Equinix deposit future payments owing to Lighthouse into a Columbia Bank account in the name of Lighthouse Electrical Group, ending in account number 0008 ("Second Lighthouse Account"). (*Id.* ¶ 10; *see also* Dorsett Decl. ¶ 2, Ex. E at 2.)

On August 3, 2016, Revitalization filed its complaint in King County Superior Court against Equinix claiming monies due in the amount of $251,216.01 for labor and supplies that Lighthouse provided to Equinix.[4] (Notice (Dkt. # 1) at 3, Ex. 2 ¶ 3.3.) On August 29, 2016, Equinix removed this suit to federal court pursuant to 28 U.S.C. § 1332(a). (*Id.* at 1-2.) On December 7, 2016, Equinix filed the instant motion for summary judgment. (Mot. at 10.)

---

[3] Equinix made the first payment of $120,681.05 on February 9, 2012. (Neupert Decl. ¶ 9.) Equinix made the second payment of $11,070.46 on February 17, 2012. (*Id.*) Equinix made the third payment of $187,169.45 on February 23, 2012. (*Id.*)

[4] Revitalization does not address how it received some, but not all, of the Equinix Funds remitted to the Blackburn Account. Equinix paid $318,920.96 to the Blackburn Account (Neupert Decl. ¶ 9), but Revitalization claims here that Equinix only owes $251,216.01. (Notice at 3, Ex. 2 ¶ 3.3).

## III. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that the movant is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact

finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these responsibilities belong to the jury, not a judge. *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Accordingly, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996).

### B. Equinix's Motion for Summary Judgment

Equinix contends that summary judgment is appropriate because Equinix "should not be compelled to pay twice for the same obligation." (Mot. at 1.) Equinix argues that its payments to Lighthouse for the Disputed Obligation fully satisfied its obligation because (1) "Equinix paid Lighthouse in full for all services provided by Lighthouse" (*id.*); (2) "Equinix is not liable for following [Ms. Blackburn's] instructions" because she was Lighthouse's agent and "was vested with actual and apparent authority to direct Equinix to make payments into the specified account" (*id.* at 2); and (3) Equinix was not

required to "verify the authority bestowed on the agent of Lighthouse and owed Lighthouse no duty of care." (*Id.*)

Revitalization opposes Equinix's motion. (*See generally* Resp.) Specifically, Revitalization argues that summary judgment is inappropriate because genuine disputes of material fact exist regarding "whether (1) the funds at issue were utilized for the benefit of Lighthouse and (2) Equinix's payment of such amounts to Sandra Blackburn instead of Lighthouse, without independent verification from Lighthouse, was objectively or commercially reasonable." (*Id.* at 2.) Revitalization argues in the alternative that the court should grant a continuance pursuant to Federal Rule of Civil Procedure 56(d) so that Revitalization can "seek discovery related to Equinix's policies and procedures regarding payment of vendor accounts by ACH and other methods, Equinix's Lighthouse vendor account, [Ms.] Blackburn's historical communications with Equinix prior to her request for payment remitted [to] her personal bank account, and related issues," as well as "an opportunity to note the depositions of Equinix and its employees." (*Id.* at 2-3.) The court now turns to the merits of Equinix's motion for summary judgment.

"[P]ayment requires both the receipt of funds by the creditor and the intention of both parties that funds should constitute payment." *U.S. Bank Nat'l Ass'n v. Whitney*, 81 P.3d 135, 140 (Wash. Ct. App. 2003) (citing *Thrifty Supply Co. of Seattle, Inc. v. Deverian Builders, Inc.*, 475 P.2d 905, 907 (Wash. Ct. App. 1970)). "Payment to an authorized agent will operate as a discharge of the indebtedness, though the agent misappropriate[s] the payment." *Petersen v. Pac. Am. Fisheries*, 183 P. 79, 80 (Wash. 1919). "Where the principal has clothed [an] agent with the indicia of authority to

receive payment . . . the purchaser is warranted in paying the price to the agent at the time of sale." *Id.*; *see also Smith v. Hansen, Hansen & Johnson, Inc.*, 818 P.2d 1127, 1132-33 (Wash. Ct. App. 1991) ("An agent's exercise of [actual or apparent] authority results in the principal's being bound."). Thus, a creditor receives payment when the debtor remits funds to the creditor's authorized agent. *See id.* The court will effectuate the intent of the parties where the parties agree to the manner and place of payment. *Thrifty*, 475 P.2d at 907. "Payment is an affirmative defense," and the party claiming payment has been made has the burden of proving the defense. *Whitney*, 81 P.3d at 140.

Here, the parties agree that Equinix at least attempted to pay Lighthouse for the services that Lighthouse provided by depositing the Equinix funds in the Blackburn Account. (Neupert Decl. ¶ 9; Dorsett Decl., Ex. A-1 at 4.) Between February 9, 2012, and February 23, 2012, Equinix remitted to the Blackburn Account funds totaling $318,920.96. (Neupert Decl. ¶ 9.) Whether both parties intended for those funds to constitute payment depends on Ms. Blackburn's authority to accept payment on Lighthouse's behalf. *See Petersen*, 183 P. at 80. Thus, if Ms. Blackburn had actual or apparent authority to accept payment, there is no genuine dispute whether Equinix validly paid Lighthouse for its services. The court therefore turns to the question of whether Ms. Blackburn was authorized to accept Equinix's payment.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Wash. Imaging Servs., LLC v. Wash. State Dep't of Revenue*, 252

P.3d 885, 892 (Wash. 2011) (quoting Restatement (Third) of Agency § 1.01 (2006)). "An agent can bind his or her principal . . . when the agent has either actual or apparent authority." *Steadman v. Green Tree Servicing, LLC*, No. C14-0854JLR, 2015 WL 2085565, at *6 (W.D. Wash. May 5, 2015) (citing *King v. Riveland*, 886 P.2d 160, 165 (Wash. 1994)). "Both actual and apparent authority depend upon objective manifestations made by the principal." *Id.* Actual authority depends on the objective manifestations made by the principal to the agent. *Id.* Apparent authority depends on the principal's objective manifestations of the agent's authority to the third party claiming apparent authority. *Id.* Such manifestations must cause the third party to actually or subjectively believe that the agent has the authority to act for the principal, and that belief must be objectively reasonable. *Id.* Although these issues are ordinarily questions of fact for the jury, when "only one conclusion may be drawn, existence of an agency [relationship] and the extent of the agent's authority" may be decided on summary judgment. *C.A.R. Transp.*, 213 F.3d at 480. The burden of establishing agency authority "rests on the [party] asserting its existence." *See State v. French*, 945 P.2d 752, 757 (Wash. 1997). Thus, whether Equinix satisfied its obligation to Lighthouse depends on whether Equinix produces evidence that Ms. Blackburn had actual or apparent authority to accept Equinix's payment on behalf of Lighthouse. *See C.A.R. Transp.*, 213 F.3d at 480 (stating that the moving party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial").

Equinix contends that Lighthouse vested Ms. Blackburn with actual authority to direct the manner of Equinix's payment. (Mot. at 8-9; Dorsett Decl., Ex. C-1 at 38; M.

Blackburn Decl. ¶ 3.) Mr. Blackburn and Ms. Blackburn attest that as the Vice President of Special Projects at Lighthouse, Ms. Blackburn had actual authority to receive payments on Lighthouse's behalf. (M. Blackburn Decl. ¶¶ 3-4; S. Blackburn Decl. ¶¶ 3-6.) Revitalization argues that there is a genuine dispute of material fact as to Ms. Blackburn's authority because Lighthouse's business records do not reflect such authority. (*See* Neupert Decl. ¶ 7.) Revitalization further argues that Equinix's reliance on Ms. Blackburn's authority was "objectively unreasonable" (Resp. at 10) and that the Blackburns' use of the Equinix Funds is a materially disputed fact (*id.* at 6). Although the Blackburns contend that they used the Equinix Funds to pay Lighthouse employees and business taxes (Dorsett Decl., Ex. B-1 at 60-61, Ex. c-1 at 38), Revitalization claims that there is evidence that the Blackburns used at least a portion of the Equinix Funds to pay personal obligations (Neupert Decl. ¶ 11).

Actual authority exists where "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01 (2006). Actual authority depends on the objective manifestations made by the principal to the agent and may be express or implied. *King*, 886 P.2d at 165; *Steadman*, 2015 WL 2085565, at *6. "A third person's reasonable observations of an agent's authority have no bearing on determining the scope of an agent's actual authority." *Mared Indus., Inc. v. Mansfield*, 690 N.W.2d 835, 844 (Wis. 2005) (citing Restatement (Second) of Agency § 7 (1958)); *see also King*, 886 P.2d at

//

165 ("With actual authority, the principal's objective manifestations are made to the agent . . . .").

The court concludes that Equinix has met its initial burden of producing evidence showing that Ms. Blackburn had actual authority to direct the Equinix Funds to the Blackburn account. "Lighthouse Electrical Group is a partnership that is owned by Matt Blackburn and Lighthouse Electrical Group, Incorporated." (Dorsett Decl., Ex. B-1 at 15.) Mr. Blackburn, the founder of Lighthouse and its President and co-owner (M. Blackburn Decl. ¶ 2; Dorsett Decl., Ex. B-1 at 15), authorized Ms. Blackburn to change Equinix's method of payment (Dorsett Decl., Ex. B-1 at 60-61, Ex. C-1 at 38). In his declaration, Mr. Blackburn states "Sandra Blackburn was authorized to act for, and acted for the benefit of, Lighthouse when she directed Equinix to satisfy its obligations to Lighthouse by making payment into an account that Sandra and I maintained at Key Bank under an account number ending in 4840." (M. Blackburn Decl. ¶ 3.) Revitalization does not dispute this fact.[5] (*See generally* Resp.)

Because Equinix has met its initial burden, "the burden shifts to [Revitalization] to identify specific facts from which the fact finder could reasonably find in [Revitalization's] favor." *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252. Revitalization fails to present any evidence contradicting Mr. Blackburn's testimony. (*See generally* Resp.) Revitalization's assertion that Lighthouse "had a CFO, a

---

[5] Moreover, Lighthouse's corporate registration form lists Mr. Blackburn and Ms. Blackburn as the only officers for Lighthouse. (Dorsett Decl. ¶ 2, Ex. I at 1 (listing Ms. Blackburn as the Vice President and Mr. Blackburn as "ALL Officers").) Mr. Blackburn could thus authorize Ms. Blackburn to accept payment on Lighthouse's behalf. *See King*, 886 P.2d at 165.

controller[,] and a dedicated accounts receivable employee" (*id.* at 10) does not create a genuine dispute whether Mr. Blackburn gave Ms. Blackburn actual authority to direct and accept accounts receivable. At most, Revitalization provides evidence that Lighthouse's records do not memorialize Ms. Blackburn's authority. (Resp. at 6; *see also* Neupert Decl. ¶ 11 ("In my review of the books and records of Lighthouse, I did not locate any records, documents or corporate resolutions reflecting that Sandra Blackburn sought or received either formal or informal authorization from Lighthouse to divert funds to the Blackburn Account.").) However, absent any indication that Ms. Blackburn's authority would or should be recorded in such a manner, the corporate records do not undermine the Blackburns' testimony that Ms. Blackburn was authorized to direct and receive payment. *See King*, 886 P.2d at 165 ("With actual authority, the principal's objective manifestations are made to the agent . . . .").

Revitalization also opposes Ms. Blackburn's actual authority on the gound that, under the circumstances, it was objectively unreasonable for Equinix to view Ms. Blackburn as acting within her authority. (Resp. at 10.) This argument, however, addresses only Ms. Blackburn's apparent authority. *See King*, 886 P.2d at 165 (holding that manifestations of authority by the principal to the third party will support a finding of apparent authority "only if they . . . cause the one claiming apparent authority to actually, or subjectively, believe that the agent has authority to act for the principal[, and are] such that the claimant's actual, subjective belief is objectively reasonable.") Equinix's reasonableness in relying on Ms. Blackburn's authority is therefore irrelevant to

//

determining whether she had actual authority to accept payment. *See id.*; *see also Mared Indus., Inc.*, 690 N.W. 2d at 844 (citing Restatement (Second) of Agency § 7 (1958)).

Revitalization further argues that there is a genuine dispute as to whether the Blackburns used the Equinix Funds to pay personal obligations. (Resp. at 1.) Revitalization produces evidence suggesting that the Blackburns may have used the Equinix Funds to pay personal expenses. (Neupert Decl. ¶ 13.) How the Blackburns used the Equinix funds, however, is irrelevant to determining whether Ms. Blackburn had actual authority to accept the funds on Lighthouse's behalf. *See Petersen*, 183 P. at 80. Because Lighthouse indisputably vested Ms. Blackburn with actual authority to accept payment, whether Ms. Blackburn used the Equinix Funds for personal expenses is immaterial. *See Anderson*, 477 U.S. at 248.

Because Revitalization has failed to demonstrate a genuine dispute of a material fact, Equinix has shown as a matter of law that Ms. Blackburn had actual authority to accept payment on Lighthouse's behalf.[6]

---

[6] Because Equinix has demonstrated that Ms. Blackburn had actual authority to accept payment on behalf of Lighthouse, the court need not determine whether Ms. Blackburn had apparent authority to direct payment. *See King*, 886 P.2d at 165 (noting that an agent can bind his or her principal when the agent has either actual or apparent authority). This determination also moots Revitalization's argument regarding Equinix's duty to verify Ms. Blackburn's authority, which is rooted in principles of apparent authority. *See id.*; *see also Udall v. T.D. Escrow Servs., Inc.,* 154 P.3d 882, 889 (Wash. 2013) (holding that where a principal vests its agent with authority "subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority."); *Mared Indus.*, 690 N.W.2d at 844 ("A third person's reasonable observations of an agent's authority have no bearing on determining the scope of an agent's actual authority."). Furthermore, Equinix—as Lighthouse's customer—does not have the type of special relationship with Lighthouse that courts have held would impose a duty on Equinix to protect Lighthouse from harm caused by a third party, in this case Ms. Blackburn. *See, e.g.*, *Robb v. City of Seattle*, 295 P.3d 212, 216

**C. Revitalization's Motion for Relief Under Federal Rule of Civil Procedure 56(d)**

As an alternative to ruling on Equinix's motion, Revitalization seeks further discovery related to "Equinix's policies and procedures regarding payment of vendor accounts by ACH and other methods, Equinix's Lighthouse vendor account, [Ms.] Blackburn's historical communications with Equinix prior to her request for payment remitted [to] her personal account, and related issues." (Resp. at 1-2.) Revitalization seeks facts to determine "whether it was objectively reasonable for Equinix to believe it would discharge its obligations to Lighthouse by remitting payment to Mrs. Blackburn's personal bank account." (*Id.* at 12.)

Equinix contends that the additional discovery that Revitalization seeks will not help Revitalization defeat Equinix's motion for summary judgment. (Reply (Dkt. # 20) at 8-9.) Equinix argues that it has established Ms. Blackburn's actual authority to accept payment on behalf of Lighthouse as a matter of law and the discovery Revitalization seeks regarding the reasonableness of Equinix's belief cannot contradict Ms. Blackburn's actual authority. (*Id.* at 8-9.)

1. Federal Rule of Civil Procedure 56(d) Standard

"Rule 56(d) 'provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" *Atigeo LLC v. Offshore Ltd. D*, No. C13-1694JLR, 2014 WL 1494062, at *3 (W.D. Wash. Apr. 16, 2014) (quoting *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002)).

---

(Wash. 2013) (citing *Kim v. Budget Rent A Car Sys., Inc.*, 15 P.3d 1283, 1285 (Wash. 2001)). For these reasons, the court declines to address the parties' arguments on these points.

Federal Rule of Civil Procedure 56(d) provides, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer considering the motion, deny the motion, allow time to obtain affidavits or declarations to take discovery, or "issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) requires the nonmovant to show "(1) it has set forth in affidavit form specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (holding that the district court did not abuse its discretion in denying a continuance where the facts sought through further discovery were only "generically relevant" and the nonmoving party failed to show how the evidence was "essential" to oppose summary judgment). The party requesting a continuance must explain how the specific facts that it seeks would preclude summary judgment. *Tatum v. City & Cty. Of S.F.*, 441 F.3d 1090, 1100-01 (9th Cir. 2006) (citing *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998)).[7]

Although the Ninth Circuit's general rule is that "[a] continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the

---

[7] On December 1, 2010, Federal Rule of Civil Procedure 56(f) was renumbered and is now Federal Rule of Civil Procedure 56(d). The advisory committee's notes to Rule 56 regarding the 2010 amendments state that "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56 advisory committee's notes. Thus, the cited authorities that refer to Rule 56(f) provide guidance on matters related to the current Rule 56(d). *Id.*

evidence," *Atigeo*, 2014 WL 1494062, at *3, a party seeking a continuance must nevertheless comply with Rule 56(d)'s requirements, *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011) (holding that the failure to comply with the requirements of Rule 56(d) is a proper ground for denying relief); *Tatum*, 441 F.3d at 1100-01 (denying a continuance where the nonmovant failed to identify the specific facts she sought through discovery and explain how those facts would defeat the motion for summary judgment); *Joseph v. Amazon.com, Inc.*, 46 F. Supp. 3d 1095, 1110 (W.D. Wash. 2014) (denying a request for further discovery because the plaintiff failed to comply with Rule 56(d)'s requirements and allowing discovery would be fruitless).

        2. <u>Revitalization's Rule 56(d) Request</u>

Revitalization has not satisfied the demands of Rule 56(d). Although Revitalization has set forth in affidavit form facts it hopes to elicit from further discovery, Revitalization fails to demonstrate that those facts are essential to oppose summary judgment. (Resp. at 11-12; Neupert Decl. ¶¶ 14-15); *see Family Home*, 525 F.3d at 827. Revitalization seeks facts that pertain to "the reasonableness of evaluating Mrs. Blackburn's actual or apparent authority." (Resp. at 11-12.) To "determine the reasonableness of evaluating Mrs. Blackburn's actual or apparent authority," Revitalization claims that it requires discovery "regarding Mrs. Blackburn's prior communications with Equinix, Lighthouse's communications and related business practices regarding accounts receivable owed by Equinix and other vendors, and Equinix's receipt and subsequent communications regarding the Blackburn ACH Form

//

and related documents." (*Id.* at 12.) Revitalization supports its request for a continuance with Mr. Neupert's declaration. (Neupert Decl. ¶¶ 14-15.)

Revitalization also cites an email that an Equinix employee wrote, which notes that the banking information for Lighthouse had apparently been changed to a personal account and alerts other Equinix personnel to the issue. (Resp. at 12 (citing L. Anderson Decl. ¶ 6, Ex. C at 1); H. Anderson Decl. (Dkt. # 19) ¶ 2.) Revitalization contends that the email provides a basis to "seek discovery regarding other communications relevant to the Equinix Funds and payment of the Obligation," which may allow Revitalization to gain further evidence that Equinix's reliance on Ms. Blackburn's authority was unreasonable. (Resp. at 12.)

The reasonableness of Equinix's belief, however, is irrelevant to whether Ms. Blackburn had actual authority. *See supra* § III.B; *King*, 886 P.2d at 165. Revitalization focuses its request for further discovery on Equinix's actions, but only Lighthouse's actions could undermine Ms. Blackburn's actual authority. (Resp. at 11-12); *see also King*, 886 P.2d at 165. As the court has discussed in detail, the reasonableness of a third party's reliance on the agent's actual authority is not a part of the actual authority inquiry. *See King*, 886 P.2d at 165; *see also Mared Indus., Inc.*, 690 N.W.2d at 844 ("A third person's reasonable observations of an agent's authority have no bearing on determining the scope of an agent's actual authority.").

At best, the only evidence that Revitalization seeks that could bear on the question of actual authority is "Lighthouse's communications and related business practices regarding accounts receivable owed by Equinix and other vendors." (Resp. at 12.)

1  However, that evidence still would not change the court's analysis because Revitalization
2  has not identified the facts it anticipates further discovery into such communications
3  would reveal, provided evidence that those facts exist, or explained how such facts would
4  defeat Equinix's motion for summary judgment by creating a genuine dispute as to Ms.
5  Blackburn's actual authority. *See Family Home*, 525 F.3d at 827. Furthermore,
6  Revitalization provides evidence that Mr. Neupert has already "reviewe[d] the books and
7  records of Lighthouse" and "did not locate any records, documents or corporate
8  resolutions" that contradict Mr. Blackburn's corroboration of Ms. Blackburn's actual
9  authority to accept payment. (Neupert Decl. ¶ 11.) If anything, Mr. Neupert's
10 declaration demonstrates that facts contradicting Ms. Blackburn's actual authority to
11 direct and accept payment on behalf of Lighthouse likely do not exist. (*See id.*)

Because the facts that Revitalization seeks are only relevant to the issue of apparent authority and Equinix has produced uncontroverted evidence that demonstrates that Ms. Blackburn had actual authority to direct the Equinix Funds to the Blackburn Account, *see supra* § III.B, the court denies Revitalization's request for a continuance.

//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Equinix's motion for summary judgment (Dkt. # 11) and DENIES Revitalization's request for a continuance (Dkt. # 17).

Dated this 2nd day of March.

                                                JAMES L. ROBART
                                                United States District Judge